UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| ABINGTON KIDS CREATIVE LEARNING CENTER, INC., | CIVIL ACTION NO. 3:22-CV-01095 |
| Plaintiff, | |
| v. | (MEHALCHICK, M.J.) |
| UTICA NATIONAL INSURANCE GROUP, et al., | |
| Defendants. | |

**MEMORANDUM**

Pending before the Court is a motion to dismiss the complaint filed by Defendants Utica National Insurance Group, Utica National Assurance Company, Utica Mutual Insurance Company, and Republic-Franklin Insurance Company (collectively, "Defendants"). (Doc. 3). Plaintiff Abington Kids Creative Learning Center, Inc. ("Abington Kids") initiated this lawsuit against Defendants for breach of the "all-risk" insurance policy (the "Policy"), alleging that the Policy provides coverage for the losses it incurred as a result of the government's actions in response to the COVID-19 pandemic. (Doc. 1-2, at 38). Defendants now move to dismiss the complaint for failure to state a claim upon which relief may be granted. (Doc. 3). For the following reasons, Defendants' motion to dismiss will be **GRANTED**.

I. **BACKGROUND AND PROCEDURAL HISTORY**

On March 14, 2022, Abington Kids commenced this action by filing a praecipe for writ of summons in the Court of Common Pleas of Lackawanna County against Defendants.[1] (Doc. 1-2, at 30). Abington Kids is a Pennsylvania-based corporation that operates a childcare center in Lackawanna County. (Doc. 1-2, ¶ 1). Defendants are New York and Ohio-based insurance companies operating within the Utica trade group. (Doc. 1-2, ¶¶ 2-6).

On June 23, 2022, Abington Kids filed the complaint in the Court of Common Pleas of Lackawanna County, asserting declaratory judgment and breach of contract claims against Defendants. (Doc. 1-2, at 35-58). In the complaint, Abington Kids contends it purchased the Policy for the policy period of February 12, 2020, to February 12, 2021. (Doc. 1-2, ¶ 13). In addition, Abington Kids claims the Policy was issued by Republic-Franklin. (Doc. 1-2, at 62). Abington Kids claims that it has suffered "substantial lost revenues" as a result of various governmental orders (the "Orders") issued in response to the COVID-19 virus, which forced it to furlough or lay off its employees. (Doc. 1-2 at 44). Abington Kids states that there is no evidence that the COVID-19 virus was present within its premises when it closed its business and claims that the cause of its loss of the use of its business was due to business closure and stay at home Orders issued in the Commonwealth. (Doc. 1-2, ¶¶ 62-63). The complaint also asserts breach of contract claims against Defendants for "denying coverage for any business losses incurred by [Abington Kids] in connection with the closure Orders and the COVID-19

---

[1] Initially, Abington Kids also named Northeast Insurance as an additional defendant to this action. (Doc. 1-2). However, on August 19, 2022, Abington Kids filed a stipulation of dismissal, notifying the Court that its claims against Northeast Insurance only are dismissed. (Doc. 22). On August 23, 2022, the Court approved the stipulation of dismissal, terminating Northeast Insurance from this action and rendering Northeast Insurance's motion to dismiss moot. (Doc. 23).

pandemic." (Doc. 1-2, at 46, 48, 51, 54, 57). Based on the foregoing, the complaint seeks declarations that (1) Abington Kids' losses are "insured losses under the Policy;" and (2) Defendants are "obligated to pay [Abington Kids] for the full amount of the losses incurred and to be incurred in connection with the covered business losses related to the closure Orders." (Doc. 1-2, at 44, 47, 50, 52, 55).

On July 13, 2022, Defendants removed this action to the United States District Court for the Middle District of Pennsylvania pursuant to 28 U.S.C. § 1332 and 28 U.S.C. § 1441(a). (Doc. 1). On July 20, 2022, Defendants filed the motion to dismiss, as well as a "memorandum of law" and request for oral argument on the motion to dismiss. (Doc. 3; Doc. 4; Doc. 6). On July 21, 2022, Defendants filed a brief in support of the motion to dismiss. (Doc. 7). On August 12, 2022, Abington Kids filed a brief in opposition to Defendants' motion to dismiss. (Doc. 18). On August 26, 2022, Defendants filed a reply brief to the motion to dismiss. (Doc. 26).

The Court conducted oral argument concerning the pending motion to dismiss on September 14, 2022. (Doc. 28). At oral argument, Abington Kids made an oral motion for a stay of proceedings pending resolution of related litigation in the Third Circuit Court of Appeals and Pennsylvania state courts. (Doc. 28). Defendants opposed Abington Kids' oral motion for a stay and presented arguments in support of their position during the oral argument. (Doc. 28). Defendants' motion to dismiss and Abington Kids' motion for a stay are now ripe for disposition.

## II. LEGAL STANDARDS

Rule 12(b)(6) authorizes a defendant to move to dismiss for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). To assess the sufficiency of a

complaint on a Rule 12(b)(6) motion, a court must first take note of the elements a plaintiff must plead to state a claim, then identify mere conclusions which are not entitled to the assumption of truth, and finally determine whether the complaint's factual allegations, taken as true, could plausibly satisfy the elements of the legal claim. *Burtch v. Milberg Factors, Inc.*, 662 F.3d 212, 221 (3d Cir. 2011). In deciding a Rule 12(b)(6) motion, the court may consider the facts alleged on the face of the complaint, as well as "documents incorporated into the complaint by reference, and matters of which a court may take judicial notice." *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007).

After recognizing the required elements which make up the legal claim, a court should "begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth." *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009). The plaintiff must provide some factual ground for relief, which "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007). "[T]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678. Thus, courts "need not credit a complaint's 'bald assertions' or 'legal conclusions…'" *Morse v. Lower Merion Sch. Dist.*, 132 F.3d 902, 906 (3d Cir. 1997) (quoting *In re Burlington Coat Factory Sec. Litig.,* 114 F.3d 1410, 1429-30 (3d Cir. 1997)). The court also need not assume that a plaintiff can prove facts that the plaintiff has not alleged. *Associated Gen. Contractors of Cal. v. Cal. St. Council of Carpenters*, 459 U.S. 519, 526 (1983).

A court must then determine whether the well-pleaded factual allegations give rise to a plausible claim for relief. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for

the misconduct alleged." *Palakovic v. Wetzel*, 854 F.3d 209, 219-20 (3d Cir. 2017) (quoting *Iqbal*, 556 U.S. at 678) (internal quotation marks omitted); *see also Sheridan v. NGK Metals Corp.*, 609 F.3d 239, 262 n.27 (3d Cir. 2010). The court must accept as true all allegations in the complaint, and any reasonable inferences that can be drawn therefrom are to be construed in the light most favorable to the plaintiff. *Jordan v. Fox, Rothschild, O'Brien & Frankel*, 20 F.3d 1250, 1261 (3d Cir. 1994). This "presumption of truth attaches only to those allegations for which there is sufficient factual matter to render them plausible on their face." *Schuchardt v. President of the U.S.*, 839 F.3d 336, 347 (3d Cir. 2016) (internal quotation and citation omitted). The plausibility determination is context-specific and does not impose a heightened pleading requirement. *Schuchardt*, 839 F.3d at 347.

### III. DISCUSSION

#### A. ABINGTON KIDS' MOTION TO STAY

During oral argument, Abington Kids made an oral motion to stay this matter pending the resolution of several other cases in the Third Circuit and Pennsylvania state courts. The central issue raised by Abington Kids is whether the pending related litigation in the Third Circuit and Pennsylvania state courts warrants staying this litigation. Abington Kids assert granting a stay would promote judicial economy as resolution of the related litigation will resolve the questions of law raised in the instant lawsuit. Defendants oppose the issuance of a stay and assert that there has been substantial consistency in judgment in state and federal courts throughout Pennsylvania and the United States to address the motion to dismiss at this time.

District courts have broad power to stay proceedings. *Locke v. Wetzel*, 2020 WL 5506435, at *2 (M.D. Pa. 2020); citing *Bechtel Corp. v. Local 215, Laborers' Int'l Union*, 544 F.2d 1207, 1215

(3d Cir. 1976). This power to stay proceedings "is incidental to the power inherent in every court to control the disposition of the causes on its docket with economy of time and effort for itself, for counsel and for litigants." *Landis v. North American Co.*, 299 U.S. 248, 254–55 (1936)). A district court may "hold one lawsuit in abeyance to abide the outcome of another which may substantially affect it or be dispositive of the issues" particularly where the other case is proceeding in another federal court. *Locke*, 2020 WL 5506435, at *2; quoting *Bechtel*, 544 F.2d at 1215; *see Miccosukee Tribe of Indians of Florida v. South Florida Water Mgmt. Dist.*, 559 F.3d 1191, 1196 (11th Cir. 2009) (holding appeals court lacked jurisdiction to hear appeal from stay where district court, *sua sponte*, stayed proceedings pending an appeal in another related federal case). The issues and the parties to the two causes need not be identical before one suit may be stayed to abide the proceedings of another. *See Landis*, 299 U.S. at 254. A district court must exercise its judgment in weighing the competing interests and maintaining an even balance when staying a proceeding. *Locke*, *supra; Cheyney State College Faculty v. Hufstedler*, 703 F.2d 732, 737–38 (3d Cir. 1983).

At the time of oral argument, pending before the Third Circuit was a set of consolidated appeals in which insured businesses brought actions against commercial property insurers, seeking to enforce coverage for losses during COVID-19 pandemic. *Wilson v. USI Ins. Serv. LLC*, 57 F.4th 131 (3d Cir. 2023). Earlier this year, the Third Circuit affirmed the District Courts' holdings that insured business' inability to use properties for their intended business purposes caused by closure order did not constitute "physical loss of" property, precluding coverage under business income, civil authority, and extra expense provisions. *Wilson*, 57 F.4th at 147-48. The Court finds that a stay is not warranted, given that there is now binding precedent in this circuit that facilitates the resolution of the issues before

the Court in this case, which is supported by both federal and state case law. *Wilson*, 57 F.4th at 147-48; *see Picone*, 2022 WL 1537351; *44 Hummelstown Assocs.*, 542 F. Supp. 3d at 341; *Body Physics v. Nationwide Ins.*, 524 F.Supp.3d 372 (D.N.J. 2021); *State St. Rest. Grp. v. Cincinnati Cas. Co.*, Civ. No. 3:20-CV-816, 2021 WL 7967680 (M.D. Pa. Nov. 15, 2021); *Boscov's Dep't Store, Inc. v. Am. Guarantee & Liab. Ins. Co.*, 546 F. Supp. 3d 354, 366 (E.D. Pa. 2021). Accordingly, Abington Kids' motion to stay is DENIED.

B. DEFENDANTS' MOTION TO DISMISS

Defendants move to dismiss the complaint for failure to state a claim pursuant to Federal Rule of Civil Procedure 12(b)(6).[2] (Doc. 3; Doc. 7, at 13). Defendants submit two reasons as to why the Court should dismiss the complaint: (1) the Policy contains a virus exclusion, which excludes from coverage loss or damage caused by or resulting from "any virus . . . that induces or is capable of inducing physical distress, illness or disease;" and (2) Abington Kids' alleged reduction in income due to COVID-19 Orders is not covered by the Policy because its losses were not "caused by direct physical loss of or damage to property" at its premises. (Doc. 7, at 14-15). In opposition, Abington Kids claims the complaint alleges sufficient facts to support its claims of declaratory judgment and breach of contract claims against them. (Doc. 18, at 3). Specifically, Abington Kids states the Policy's virus exclusion is inapplicable because its losses are due to the Orders, not the COVID-19 virus, and the virus

---

[2] In addition, Defendants argue that Utica National Insurance Group, Utica National Assurance Group, and Utica Mutual Insurance Group should be dismissed from this action because they are not parties to the Policy and, therefore, cannot be held liable for the purported breach of its terms. (Doc. 7, at 15-16). In opposition, Abington Kids argues discovery is needed to ascertain the relationship between the parties. For the reasons discussed *infra,* the Court finds that Abington Kids has failed to allege in its complaint a claim upon which any relief can be granted against any of the named defendants. Therefore, the Court declines to address the merits of this issue.

exclusion does not contain language excluding coverage due to a concurrent cause. (Doc. 18, at 5-10). In addition, Abington Kids asserts the complaint otherwise alleges facts that would entitle it to recovery under the Policy's business income and extra expense coverage provisions because Abington Kids sufficiently alleges direct physical loss of or damage to its property during a period of restoration. (Doc. 18, at 10-15).

Under Pennsylvania law, an "insured bears the initial burden to make a *prima facie* showing that a claim falls within the policy's grant of coverage." *See State Farm Fire & Cas. Co. v. Est. of Mehlman*, 589 F.3d 105, 111 (3d Cir. 2009) (applying Pennsylvania law). If the insured meets that burden, "the insurer then bears the burden of demonstrating that a policy exclusion excuses the insurer from providing coverage if the insurer contends that it does." *See State Farm Fire & Cas. Co.*, 589 F.3d at 111. Courts interpreting provisions of insurance policies must give effect to their "clear and unambiguous" language. *See Med. Protective Co. v. Watkins*, 198 F.3d 100, 103 (3d Cir. 1999) (applying Pennsylvania law). Policy provisions that are "reasonably susceptible to more than one interpretation" are ambiguous. *See Med. Protective Co.*, 198 F.3d at 103 (internal quotation marks omitted) (quoting *McMillan v. State Mut. Life Assur. Co.*, 922 F.2d 1073, 1075 (3d Cir. 1990)). "In order to determine whether a term or language in a policy provision is ambiguous, the term or language must be considered in the context of the entire policy." *Madison Const. Co. v. Harleysville Mut. Ins. Co.*, 678 A.2d 802, 805 (1996), *aff'd*, 735 A.2d 100 (1999).

> 1. **The Policy's virus exclusion unambiguously excludes coverage for all loss caused by or resulting from COVID-19.**

As a threshold matter, each of the claims require that Abington Kids is entitled to coverage under the Policy. *See Jugan v. Econ. Premier Assurance Co.*, 728 F. App'x 86, 90 (3d Cir. 2018) ("Pennsylvania law places the initial burden of establishing the existence of insurance

coverage on the insured.") Defendants argue that Abington Kids cannot overcome this threshold issue because the Policy "unambiguously excludes from coverage all loss caused by or resulting a virus." (Doc. 7, at 8). In relevant part, the Policy contains an endorsement, titled "Exclusion of Loss Due to Virus or Bacteria" (the "Virus Exclusion"), that excludes coverage for all "loss or damage caused by or resulting from any virus, bacterium or other microorganism that induces or is capable of inducing physical distress, illness or disease." (Doc. 7-1, at 129). The Virus Exclusion expressly applies, but is not limited to, the sections of the Policy invoked by the complaint, including "all coverage under Section I – Property," and "forms or endorsements that cover property damage to buildings or personal property and forms or endorsements that cover business income, extra expense or action of civil authority." (Doc. 1-2, at 38; Doc. 7-1, at 129).

Defendants contend "a loss resulting from the response to the virus is unequivocally a loss 'caused by or resulting from' the virus. This is the only reasonable application of the plain and ordinary meaning of the terms of the Policy to the facts alleged." (Doc. 7, at 21). Defendants argue that Abington Kids' allegations that its losses were caused by actions taken to comply with the Orders issued in response to COVID-19, not the virus itself, is not sufficient to avoid the application of the Virus Exclusion. (Doc. 7-1, at 22). In opposition, Abington Kids contends Defendants "overly broad" reading renders the Virus Exclusion ambiguous and thus, should be construed in its favor. (Doc. 18, at 6-7).

Upon consideration of the allegations in the complaint, the terms of the Policy, the parties' arguments, and the applicable law, the Court finds that Abington Kids has failed to allege a plausible claim to coverage under the Policy. In doing so, the Court joins the scores of courts that have considered identical exclusions in insurance policies and have concluded

that these exclusions are "unambiguous and clearly applicable 'to COVID-19, which is caused by a coronavirus that causes physical illness and distress.'" *Picone*, 2022 WL 1537351, at *6 (quoting *Body Physics*, 524 F.Supp.3d at 380); *see 44 Hummelstown Associates*, 542 F.Supp.3d at 340 (dismissing a claim for a declaration of coverage under an all-risk insurance policy for the insured's failure to plausibly allege physical loss of or damage to the covered premises stemming from COVID-19 and Governor Wolf's orders); *Kahn*, 517 F.Supp.3d at 321–23 (same); *1 S.A.N.T., Inc. v. Berkshire Hathaway, Inc.*, 513 F.Supp.3d 623 (W.D. Pa. 2021) (same); *ATCM Optical, Inc. v. Twin City Fire Ins. Co.*, 513 F.Supp.3d 513 (E.D. Pa. 2021) (same); *The Scranton Club v. Tuscarora Wayne Mut. Group, Inc.*, No. 20-CV-2469, 2021 WL 454498, at *10 (Pa. Com. Pl. Jan. 25, 2021) (same).

First, the Virus Exclusion unambiguously provides that that Defendants will not cover any loss caused by or resulting from "any virus . . . or other microorganism that induces or is capable of inducing physical distress, illness, or disease." (Doc. 7-1, at 129); *see 44 Hummelstown Associates*, 542 F.Supp.3d at 340. Here, Abington Kids fails to specify any ambiguities in the language of the Virus Exclusion; rather, it argues Defendants' enforcement of the Virus Exclusion renders the language ambiguous because Abington Kids' losses were caused by the closure Orders, not the virus. (Doc. 18, at 7). Indeed, Abington Kids concede in the complaint that COVID-19 is a "virus" that caused a "pandemic." (Doc. 7-1, at 21). Notably, the Virus Exclusion does not suggest that the virus must be present at the insured property for the exclusion to apply. *See* (Doc. 7-1, at 129). "There is no other way to characterize COVID-19 than as a virus which causes physical illness and distress." *Brian Handel D.M.D., P.C. v. Allstate Ins. Co.*, 499 F.Supp.3d 95, 100 (E.D. Pa. 2020); *see also Lansdale 329 Prop, LLC v. Hartford Underwriters Ins. Co.*, No. 20-CV-2034, 537 F.Supp.3d 780, 794–95

(E.D. Pa. Apr. 28, 2021). Thus, any claim that the loss or damage was caused by COVID-19 is plainly barred by the Virus Exclusion. *See Picone,* 2022 WL 1537351, at *6 (rejecting plaintiff's argument that its losses of business income and extra expenses were both a result of COVID-19 itself and the Governor's closure orders).

Next, courts in the Third Circuit have held that a claim of loss due to governmental civil authority orders "cannot circumvent the Virus Exclusion, as the closure orders were issued 'to stop the spread of the virus,' and thus fall under the exclusion." *Picone,* 2022 WL 1537351, at *6 (citing *Big Red Management Corp. v. Zurich American Ins. Co.*, 579 F.Supp.3d 665, 671 (E.D. Pa. 2022)); *see Frank Van's Auto Tag, LLC v. Selective Ins. Co. of the Se.*, 516 F.Supp.3d 450, 460 (E.D. Pa. 2021) ("[T]he plain text of the provision bars coverage for loss or damage caused 'indirectly' by any virus . . . . [T]he March 2020 Closure Orders were issued with the plan to stem the spread of COVID-19"). Abington Kids claims that its covered business losses are a result of the Orders. (Doc. 1-2, at 43-44). However, Abington Kids concedes the Orders were issued "in response to [the COVID-19] pandemic." (Doc. 7-1, at 21). As the Orders were issued to stop the spread of the COVID-19 virus, Abington Kids cannot circumvent the Virus Exclusion. *See Picone,* 2022 WL 1537351, at *6. Thus, even if "Plaintiff's claimed losses fell within the grant of coverage under the Business Income or Civil Authority provisions, the Virus Exclusion would still prevent recovery." *44 Hummelstown Assocs.*, 542 F. Supp. 3d at 341 (quoting *Whiskey Flats Inc. v. Axis Ins. Co.*, No. 20-cv-3451, 519 F.Supp.3d 231, 237, (E.D. Pa. Feb. 12, 2021)).

Accordingly, the Court finds that Abington Kids' claims for business income, extended business income, and extra expense are barred under the Virus Exclusion. *See Picone,* 2022 WL 1537351, at *6; *44 Hummelstown Assocs.*, 542 F. Supp. 3d at 341.

> **2. The Policy unambiguously requires direct physical loss, which the COVID-19 virus does not cause.**

Next, Defendants argue that, even if the virus exclusion is unenforceable or inapplicable, Abington Kids' claims for business income, extended business income, and extra expense coverage also fails because Abington Kids' loss of income was not caused by "direct physical loss of or damage to property" at its childcare center. (Doc. 7, at 24).

In relevant part, the Policy provides Business Income coverage for "the actual loss of Business Income you sustain due to the necessary suspension of your 'operations' during the 'period of restoration.'" (Doc. 7-1, at 32). Second, the Policy provides Extended Business Income coverage for "the actual loss of Business Income" incurred "during the period that . . . [b]egins on the date property except finished stock is actually repaired, rebuilt or replaced and 'operations' are resumed." (Doc. 7-1, at 32). The coverage ends on the earlier of:

> i. The date you could restore your "operations", with reasonable speed, to the level which would generate the Business Income amount that would have existed if no direct physical loss or damage had occurred; or
>
> ii. 30 consecutive days after the date determined in Paragraph (a)(i) above.

(Doc. 7-1, at 32). The Extended Business Income coverage does not apply to: "loss of Business Income incurred as a result of unfavorable business conditions caused by the impact of the Covered Cause of Loss in the area where the described premises are located. (Doc. 7-1, at 33). Third, the Policy provides Extra Expense coverage for necessary expenses incurred "during the 'period of restoration' that you would not have incurred if there had been no direct physical loss or damage to property" caused by or resulting from a covered cause of loss. (Doc. 7-1, at 33).

To establish a *prima facie* claim for coverage under the Policy's Business Income, Extended Business Income, and Extra Expense coverage provisions, Abington Kids must

plausibly allege that it suffered "physical loss or damage at the described premises caused by or resulting from any Covered Cause of Loss." (Doc. 7-1, at 32-33). For Business Income coverage, the "period of restoration" begins 72 hours after the time of direct physical loss or damage" and ends on the earlier of the date when "property at the described premises should be repaired, rebuilt or replaced with reasonable speed and similar quality; or . . . [t]he date when business is resumed at a new permanent location." (Doc. 7-1, at 54-55). For Extra Expense coverage, the "period of restoration" begins "[i]mmediately after the time of direct physical loss or damage" and is otherwise defined as for Business Income. (Doc. 7-1, at 54).

Defendants argue Abington Kids has failed to allege any direct physical loss or damage to its childcare center or that such direct physical loss or damage caused Plaintiff to suspend operations or incur any additional expense. (Doc. 7, at 26). Rather, Abington Kids has alleged only a "loss of use of its business" as a result of the orders, which Defendants aver does not constitute "direct physical loss or damage" for triggering coverage. (Doc. 7, at 25). In opposition, Abington Kids argues that the motion to dismiss must be denied because whether it has sufficiently alleged "physical loss or damage" to its property presents a question of fact, not a legal issue that can be decided at this early stage. (Doc. 18, at 10). Finally, Abington Kids states that it has sufficiently alleged direct physical loss of or damage to its property because its complaint alleges that it was both required to close its business as a result of the orders and cease operations which has caused significant financial losses. (Doc. 18, at 13-14).

Before considering whether Abington Kids' allegations state a plausible claim for coverage, the Court must determine whether the relevant terms of the Policy are clear and unambiguous. *See* 44 *Hummelstown Assocs.*, 542 F. Supp. 3d at 336 (citing *Ready Food Prods., Inc. v. Great N. Ins. Co.*, 612 A.2d 1385, 1387 (1992) (noting that "[t]he threshold determination

of whether a writing is 'ambiguous' necessarily lies with the court")). A policy term is not "ambiguous merely because it is not defined in the policy." *See Wall Rose Mut. Ins. Co. v. Manross*, 939 A.2d 958, 965 (Pa. Super. 2007); *see also Telecommunications Network Design*, 5 A.3d at 336-37 (noting that the mere presence of an undefined policy term that "can imply several meanings is insufficient to create ambiguity"). Nor does ambiguity "exist simply because the parties disagree on the proper construction to be given a particular policy provision." *See Neuhard v. Travelers Ins. Co.*, 831 A.2d 602, 605 (Pa. Super. 2003) (citing *Tyler v. Motorists Mutual Ins. Co.*, 779 A.2d 528, 531 (Pa. Super. 2001)). Rather, when a "policy . . . neglects to define a term, the Court will read it in the plain and generally accepted meaning of the term," *see 1 S.A.N.T.*, 513 F.Supp.3d at 629, mindful that "[w]ords of common usage in an insurance policy are to be construed in their natural, plain, and ordinary sense, and [that courts] may inform [their] understanding of the terms by considering their dictionary definitions," *see Madison Const. Co.*, 735 A.2d at 108.

Here, Abington Kids argues Defendants' failure to define any of the terms "direct," "physical," "loss," or "damage," renders the terms ambiguous, and thus should be construed in favor of Abington Kids. (Doc. 18, at 11). Abington Kids' attempt to inject ambiguity into the Policy is unavailing. As the Court previously explained:

> "Direct" means "stemming immediately from a source" and is "marked by [the] absence of an intervening agency, instrumentality, or influence." *See* Direct, Merriam-Webster's Collegiate Dictionary (10th ed. 1997). "Physical" means "of, relating to, or involving material things; pertaining to real, tangible objects." *See* Physical, Black's Law Dictionary (11th ed. 2019). "Loss" means "destruction, ruin," the "act of losing possession," and "[d]amage" means "loss or harm resulting from injury to person, property, or reputation." *See* Damage, Loss, Merriam-Webster's Collegiate Dictionary (10th ed. 1997). Considering these terms in context, the Court agrees with Plaintiff that the phrase "direct physical loss of or damage to" requires either "direct physical loss" or "direct physical damage." This is so because the terms "direct" and "physical" modify both "loss" and "damage." *See Frank Van's Auto Tag, LLC v. Selective Ins. Co. of*

*the Se.*, No. 20-cv-2740, 516 F.Supp.3d 450, 456–57, (E.D. Pa. Jan. 28, 2021); *see also, e.g., Kahn*, 517 F.Supp.3d at 321–23.

As to "physical loss" and "physical damage," in a leading and oft-quoted insurance treatise, it is observed that the requirement in an insurance policy "that [a covered] loss be 'physical' . . . is widely held to exclude [intangible or incorporeal] losses . . . ." *See* 10 Couch on Insurance § 148:46. It follows that a "detrimental economic impact unaccompanied by a distinct, demonstrable, physical alteration of the property" does not qualify as "physical" loss or damage. *See* id. Under this rationale, courts have construed policies insuring against "direct physical loss" or "direct physical damage" to require "actual, demonstrable harm of some form to the [insured] premises itself, rather than forced closure of the premises for reasons extraneous to the premises themselves, or adverse business consequences that flow from such closure." *See, e.g., Hair Studio 1208 v. Hartford Underwriters Ins. Co.*, No. 20-cv-2171, 539 F.Supp.3d 409, 417, (E.D. Pa. May 14, 2021) (internal quotation marks omitted). There must be "some tangible issue with the physical structure of the business's premises," *Kahn*, ––– F.Supp.3d at –––, 2021 WL 422607, at *6, as well as a "direct nexus between" the tangible issue and the alleged loss, *see Frank Van's Auto Tag, LLC*, 516 F.Supp.3d at 456–57.

44 *Hummelstown Assocs.*, 542 F.Supp.3d at 337.

In *Picone*, the Court denied coverage because the plaintiff failed to demonstrate sufficient physical loss or damage to trigger the civil authority provision of the insurance policy. 2022 WL 1537351, at *7. The Court rejected plaintiff's argument that because the words "loss" and "danger" are not defined in the policy, they were therefore ambiguous. *Picone,* 2022 WL 1537351, at *7. The Court explained: "The Third Circuit has held that physical damage to a property means "a distinct, demonstrable, and physical alteration" of its structure such that "its function is nearly eliminated or the structure is made useless or uninhabitable." *Picone,* 2022 WL 1537351, at *4 (quoting *Port Auth. of New York & New Jersey v. Affiliated FM Ins. Co.*, 311 F.3d 226, 235 (3d Cir. 2002)). Further, the Court explained that even where "physical loss" is not defined in the Policy, this does not render the term ambiguous. *Picone,* 2022 WL 1537351, at *4 (quoting *Kahn,* 517 F.Supp.3d at 322). The Court also found in the context of insurance claims following COVID-19 closures, the presence of

COVID-19 does not constitute physical loss or damage for purposes of insurance policies. *Picone,* 2022 WL 1537351, at *5; s*ee e.g., 44 Hummelstown Assocs., LLC*, at 328 (denying the plaintiff's claim for business income and extra expense losses because "none of the allegations in the amended complaint plausibly supports Plaintiff's contention that COVID-19 and the Governor's orders 'h[ad] something to do with the physical condition of the premises'").

Most recently, in *Wilson v. USI Ins. Serv. LLC*, the Third Circuit Court of Appeals held insured businesses' inability to use property for their intended purpose caused by government edict did not constitute "physical loss of" property, precluding coverage under business income and extra expense provisions. 57 F.4th 131, 143-47 (3d Cir. 2023). The Third Circuit concluded that insured businesses were not entitled to coverage under civil authority provisions, explaining:

> No business alleged that a property other than the insured premises was damaged or suffered a physical loss or that an action of a civil authority prohibited access to the insured premises because of loss or damage to another property. Indeed, the closure orders were issued not in response to property loss or damage but to mitigate health risks to the public and slow the spread of COVID-19 by limiting person-to-person exposure. Even more fundamentally, the closure orders did not prohibit access to the businesses' properties. The businesses remained physically accessible; the closure orders merely prohibited certain uses of the buildings. *See Philadelphia Parking Auth. v. Fed. Ins. Co.*, 385 F. Supp. 2d 280, 289 (S.D.N.Y. 2005) (applying Pennsylvania law) (finding no civil authority coverage where the civil authority grounded airplanes, which "may have temporarily obviated the need for Plaintiff's parking services" but "did not prohibit access to Plaintiff's garages and therefore c[ould] not be used to invoke coverage under Plaintiff's [insurance] policy"); *see also S. Hosp., Inc. v. Zurich Am. Ins. Co.*, 393 F.3d 1137, 1141 (10th Cir. 2004) ("We hold that the civil authority provision does not apply because the FAA's order grounding flights did not itself prevent, bar, or hinder access to Southern Hospitality's hotels in a manner contemplated by the policies.").

*Wilson*, 57 F.4th at 147.

Here, Abington Kids claims that its covered losses were due to the Orders issued in response to the COVID-19 virus, not the virus itself. (Doc. 1-2, at 44). However, like the

complaint in *Picone* and *Wilson*, the complaint does not allege that any part of the physical structure of the premise was damaged or lost. Instead, the complaint only claims losses of business and financial losses, not property. (Doc. 1-2, at 44). Applying the unambiguous terms of the Policy to Abington Kids' allegations, the Court finds that Abington Kids has failed to state a plausible claim for coverage under the Business Income, Extended Business Income, and Extra Expense provisions. *See 44 Hummelstown Assocs.*, 542 F.Supp.3d at 337-38; *Wilson,* 57 F.4th at 144. Abington Kids' allegations simply do not support its claims that the COVID-19 virus and resulting Orders caused "direct physical loss of or damage to" the covered premises. *See Picone,* 2022 WL 1537351, at *5; *44 Hummelstown Assocs.*, 542 F.Supp.3d at 337-38; *Wilson,* 57 F.4th at 144. As physical damage or loss to the covered property stands as a firm prerequisite for direct loss coverage under this policy language, the Courts concludes that such coverage was never triggered. In short, none of the allegations in the complaint plausibly support Abington Kids' contention that COVID-19 and the Orders "h[ad] something to do with the *physical condition* of the premises." *See Moody v. Hartford Fin. Grp., Inc.*, 513 F.Supp.3d 496, 505 (E.D. Pa. 2021) (emphasis added). Furthermore, although the policy was labeled as "all-risk," the Court notes that "'all risks' does not mean 'every risk' . . . '[a] loss which does not properly fall within the coverage clause cannot be regarded as covered thereby merely because it is not within any of the specific exceptions.'" *Picone,* 2022 WL 1537351, at *5 (quoting *Port Auth.*, 311 F.3d at 233-34 (quoting 10 Couch on Insurance § 148:48 (3d ed. 1998))).

Accordingly, Abington Kids' claims are dismissed.

C. L<small>EAVE FOR</small> A<small>MEND</small>

The Third Circuit has "instructed that if a complaint is vulnerable to 12(b)(6) dismissal, a district court must permit a curative amendment, unless an amendment would be inequitable or futile." See *Phillips v. Cty. of Allegheny*, 515 F.3d 224, 236 (3d Cir. 2008) (citing *Grayson v. Mayview State Hosp.,* 293 F.3d 103, 108 (3d Cir. 2002)). "An amendment is futile if the amended complaint would not survive a motion to dismiss for failure to state a claim upon which relief could be granted." *44 Hummelstown Assocs.,* 542 F. Supp. 3d at 342 (quoting *Alvin v. Suzuki*, 227 F.3d 107, 121 (3d Cir. 2000)). Here, the none of the allegations in Abington Kids' pleadings are capable of establishing a *prima facie* case for relief under the Policy. Given the clear applicability of the Virus Exclusion to the covered losses and that it seeks to recover for intangible harms unrelated to the physical form of the covered property, Abington Kids does not appear to have any plausible, factual basis upon which to invoke the Policy's coverage. Thus, the Court finds that permitting further amendment would be futile. *See 44 Hummelstown Assocs.*, 542 F.Supp.3d at 342 (denying leave to amend where complaint failed to establish *prima facie* claims for relief under insurance policy because plaintiff sought recovery for intangible harms unrelated to physical form of covered property).

IV. C<small>ONCLUSION</small>

For the foregoing reasons, Defendants' motion to dismiss is **GRANTED**. (Doc. 3). The claims against Defendants are **DISMISSED WITH PREJUDICE** and the Clerk of Court is directed to **CLOSE** this action. An appropriate Order follows.

BY THE COURT:

Dated: March 16, 2023

*s/ Karoline Mehalchick*
**KAROLINE MEHALCHICK**
**Chief United States Magistrate Judge**